## WILLIE GILBERT V. STATE.

No. 26,673. December 9, 1953.
Appellant's Motion for Rehearing Denied February 17, 1954.

*Henry E. Doyle, Francis L. Williams,* and *Bernard A. Goulding,* Houston, for appellant.

*William H. Scott,* District Attorney, *King C. Haynie,* Assistant District Attorney, Houston, and *Wesley Dice,* State's Attorney, Austin, for the state.

MORRISON, Judge.

The offense is murder; the punishment, 99 years.

This is a companion case to Sampson v. State, No. 26,604, but in order to properly discuss appellant's contentions the facts will be stated fully.

It was shown that Mrs. McCasland, while working in a flower shop alone, met her death on January 6, 1953, between

3:00 and 3:35 p. m. as the result of a gunshot wound. The money from the flower shop was taken. There is some evidence that she received other wounds than those caused by the firing of a weapon. In this case it was shown that some ten days prior to the homicide the appellant had come to the flower shop with a stick in his hand ostensibly looking for work.

The appellant and his co-indictee were arrested on suspicion of another offense on January 7. The confession implicating appellant and his co-indictee was dated January 11.

The confession introduced in evidence relates that on January 6 Sampson (his co-indictee) came to his home; that the two of them "pushed off the Chevrolet and got it started"; that he saw a pistol in Sampson's possession; that they went by Sampson's house and got a round stick with a piece of iron on one end to be used by him in the robbery of a flower shop which they had planned; that this same stick had been shown to the appellant by Captain Frazier (of the sheriff's office) ; that they drove by a flower shop, noticed that no customer was there; that they left the motor running and entered the shop; that Sampson asked the woman in attendance for change for a $5.00 bill, and when she turned her back the appellant hit her on the head with the iron end of the stick; that his first blow staggered the woman; that he hit her again; that she fell to the floor; that Sampson walked over and shot her through the head; that they then took the money out of the cash box and left the premises, dividing the money as they drove away. The confession concludes with the statement that appellant saw Sampson the next day, and Sampson reported that he had thrown the pistol away and carried the stick back home and put it under the bed.

The sheriff and his deputy Middleton testified that they searched Sampson's home, found a stick under the bed, and carried it to the Texas Department of Public Safety in Austin for testing. Chemist McDonald of that department testified that he performed tests on the stick with the piece of iron on one end, delivered to him, and found human blood on or near the piece of iron fastened to the stick.

The defense offered W. B. Sampson, who testified that after the flower shop murder the officers came to the home he shared with appellant's co-indictee and got a stick from under the bed. Appellant, on cross-examination, testified that his automobile

did not have a starter and that it had to be pushed in order to get it started.

The pistol was never found, though a search was made for it.

The appellant's defense was that of alibi, and he was in a measure supported by some of his witnesses. Appellant testified, however, that he was within two blocks of the flower shop at 3:00 p. m. on the day of the homicide.

Unless the confession was inadmissible as a matter of law, the evidence is sufficient to support the conviction.

Appellant, while testifying in his own behalf, denied that he signed the statement offered in evidence by the state. He claimed brutality and admitted signing a statement, but claims that it was not read to him and said that he signed it on January 7 rather than January 11, which is the date found in the heading of the confession and the date on which the state witnesses say it was signed.

By authority of Lee v. Miss., 332 U. S. 741, 92 L. Ed. 330, we shall test the voluntary nature of the confession offered in evidence by the state, applying the undisputed evidence rule.

In Stein v. N. Y., 97 L. Ed. (Advance p. 1007), we find a very accurate guide for this adjudication. We adopt the subjects of inquiry enumerated in that case:

1. Physical violence.

The appellant testified that he was whipped by the officers who had him in custody with a rubber hose; that one of them mashed his hand by stepping on it, and another beat him over the head; and that they continued this conduct toward him for approximately a week after he was arrested.

Each of the officers identified by the appellant denied that he struck the appellant at any time while he was in their custody or that he had inflicted any brutality upon him in any manner.

It is undisputed that the appellant was taken immediately after the state's evidence shows that he signed the confession to a hospital where he was given a physical examination. The

doctor testified that he carefully inspected the appellant's entire body and found no marks of violence anywhere. The doctor gave his opinion that if the appellant had been beaten by a rubber hose with any force at all at any time during the week preceding his examination he would have been able to detect it. He further testified that he saw nothing that would indicate that the appellant had lost any great amount of sleep (the pertinency of which will be later noted).

2. Psychological coercion.

The homicide occurred near the city limits, some six miles from the sheriff's office, and somewhere in the vicinity of where the appellant lived. In order to facilitate his investigation of the murder, the sheriff rented a nearby cafe, complete with furniture, which happened to be vacant at the time, and there established a temporary headquarters. It was there that the appellant and the many other suspects were questioned. At night the appellant was lodged in the jail, but not questioned there. It seems to have been generally known that the cafe was the sheriff's headquarters for the investigation of the flower shop murder. In his cross-examination the appellant referred to this place as "imaginary headquarters." The record does not support the conclusion that there was anything improper or sinister about the procedure here involved. A murder had been committed; it became the duty of the sheriff to question all suspects with the utmost dispatch. The fact that he interrogated a number of people does not in itself alone mean that he violated the constitutional rights of all or any of them. We cannot escape the conclusion that the situs of his interrogation was more favorable to the appellant than had he been questioned against a background of clanging jail doors.

Appellant testified that at one time during his interrogation he was carried out in the country at night. This was denied by the officers. The appellant testified that he was carried out of the temporary headquarters at seven o'clock each morning and not returned to jail until three o'clock the next morning. This likewise was denied by the officers, but they did state that the appellant was out at the temporary headquarers about a half dozen times. It is impossible to determine from the record just how long the appellant was questioned on these occasions. This is so because the police questioned some fifteen other suspects during the time they were questioning the appellant. The only evidence which raised the issue of long and interrupted ques-

tioning was that part of appellant's testimony where he said that one officer questioned him for ten minutes followed by a ten or fifteen minute wait, and then another officer asked him more questions, and that three officers were present at the time. To hold that this questioning was so oppressive as to overwhelm the appellant's powers of resistance would be in the teeth of the language of the Supreme Court in the Stein case when they said:

"But we have never gone so far as to hold that the Fourteenth Amendment requires a one-to-one ratio between interrogators and prisoners, or that extensive questioning of a prisoner automatically makes the evidence he gives in response constitutionally prohibited."

The fact that the appellant was relatively young and small of stature does not in itself alone render inadmissible any confession he might make.

3. Illegal detention.

As stated, appellant and his co-indictee were arrested on January 7 on suspicion of another offense. The officers testified that one Dorothy Benton prior to the commission of the homicide had reported a theft, and from the information given they had put out a pick up on a certain automobile. On January 7 an automobile corresponding to the description given was stopped by officers on the same street as the flower shop, and its occupants (appellant and Sampson) were arrested. Dorothy Benton testified that she had made the report, but that appellant was not the man she had seen attempting to steal the tire. There is some evidence that would indicate that these two men were in possession of stolen merchandise at the time they were arrested. A complaint against the appellant charging him with being a vagrant was filed on the day of his arrest. Be that as it may, Benton did not identify the appellant, and no complaint for theft was filed against him, but the appellant was detained and questioned in connection with this offense and was not taken before a magistrate until after the date of the confession.

In the Sampson case we discussed the applicability of the McNabb rule to state court cases and cited authorities.

We now come to the testimony of the state's witnesses as to the execution of the confession. The confesison was witnessed

by A. C. Martindale and C. R. Cook. The district attorney, his investigator, the sheriff and one or more deputies, and a newspaper reporter were present at the temporary headquarters at the time they testified that it was executed by the appellant. At this juncture we observe that when the appellant was on the stand early in the case he signed his name several times and his counsel indicated that he desired the services of a handwriting expert, which the court told him he was entitled to have, but the matter was not pursued any further.

Martindale, an officer, had not worked on the case but had come by the temporary headquarters earlier in the evening. He testified that the appellant read part of the confession out loud and then signed it.

Cook, a fireman, was at the temporary headquarters in connection with flood lights being used to search for the pistol down on the bayou. He testified that the appellant was asked before signing the statement if he wanted to sign it of his own free will and if it was a true statement, and that the appellant replied in the affirmative and signed the original and several copies in his presence.

J. W. Cummings, a reporter for the Houston Post, testified that the appellant gave the details of the statement to the person writing it and then signed it in his presence. Mr. Cummings testified that he saw no marks of violence upon the appellant and that shortly after the execution of the confession he had taken a picture of the appellant in the nude and saw no bruises of any kind on his body.

Ted Walsh testified that he arrived at the headquarters shortly before the confession was made and that he typed it up from information given by the appellant.

We have concluded that the confession was not shown to be inadmissible as a matter of law and the trial court did not err in admitting the same and having the jury pass upon its voluntary character.

Appellant filed motions to quash the indictment on the grounds that there had been racial discrimination in the selection of the grand jury commissioners, the grand jury, and the venire itself.

Recently, in Morris v. State, 158 Tex. Cr. Rep. 516, 251 S. W. 2d 731 (writ of certiorari denied May 4, 1953), we had occasion to pass upon the first ground. This case came from the same county as did the Morris case. We have compared the proof adduced in that case with the proof before us in the case at bar and find no material difference.

Without reviewing the testimony relative to the selection of the grand jury and venire, we think it is clearly shown that Harris County not only does not discriminate against the colored race but, under the far-sighted leadership of Judge Frank Williford, has set a model that others might do well to emulate.

Appellant has presented this court with a very forceful brief. We have studied the authorities therein cited but cannot bring ourselves to agree with him as to the facts of the case before us.

Finding no reversible error, the judgment of the trial court is affirmed.

ON APPELLANT'S MOTION FOR REHEARING.

WOODLEY, Judge.

Appellant's motion for rehearing is addressed solely to the contention that the confession was inadmissible as a matter of law and should not have been admitted.

In addition to what we said upon that question in our original opinion, we observe the following:

The sole complaint as to the confession is raised by Bill of Exception No. 4. This bill complains of the overruling of appellant's motion to suppress the confession and the court's action in admitting it in evidence over his objection.

Bill of Exception No. 4 reveals that appellant filed a motion to suppress the confession and when the confession was offered in evidence, the jury was withdrawn and the court heard evidence on the question of its admissibility.

The state's witness testified that the statutory warning was given and that appellant signed this confession in the sheriff's temporary headquarters, in his presence and in the presence of District Attorney Scott, Ted Walsh, J. R. Cook and A. C. Martindale.

Appellant then took the stand and denied that he signed the confession offered in evidence. He testified that he signed another paper on which the name of his co-defendant appeared, but not that offered by the state. Also he denied signing any paper on January 11th, the date of the confession offered by the state, and said that it was January 7, 1953, that he signed his name to a paper on which Maurice Sampson's name appeared.

Appellant also testified in the absence of the jury that he went to the high seventh grade in school; was 18 years of age, and that he understood all of the words in the confession offered by the state.

This was the testimony before the court when he came to rule upon whether the confession should be admitted before the jury or should be suppressed.

The motion to suppress was no more than a pleading and under our practice may at most be considered as the grounds for objection to the admissibility of the evidence offered.

The trial court was correct in admitting the confession in evidence, reserving for the jury the issue as to whether it was voluntarily made and signed by appellant, as testified by the state's witnesses, or it was not, as claimed by appellant. There are no objections to the court's charge.

We remain convinced that Bill of Exception No. 4 shows no reversible error.

Appellant's motion for rehearing is overruled.