**Jose Dias DE SOUZA, Appellant,**

v.

**Bruce G. BARBER, Director of Immigration and Naturalization, Appellee.**

**No. 15913.**

United States Court of Appeals
Ninth Circuit.

Jan. 30, 1959.

---

**472**

Fredricks & Sullivan, James E. Fredricks, Warren Sullivan, Guernsey Carson, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Senior Circuit Judge, POPE, Circuit Judge, and JAMESON, District Judge.

JAMESON, District Judge.

This is an appeal from an order denying a writ of habeas corpus sought by appellant alien upon being taken into custody by respondent pursuant to an order of deportation.

Appellant deSouza was born in Portugal on June 4, 1909 and was admitted for permanent residence in the United States in either 1912 or 1916.[1] On February 19, 1929, after conviction, upon his plea of guilty, he was sentenced to one to fourteen years in the state prison in San Quentin for issuing a bad check with intent to defraud. He entered San Quentin on March 12, 1929. On March 14th he signed a statement containing the admission that he left the United States in February, 1926, going to Mexico, and that he entered the United States at Calexico, California on the same date, without inspection. A transcript of a "record of investigation" conducted at San Quentin on May 14, 1929, by a U. S. Immigration Inspector contains a similar admission.

On June 7, 1929, a warrant of arrest was issued charging that appellant had been found in the United States in violation of the Immigration Act of February 5, 1917, for the reason that he had been sentenced to imprisonment for a term of one year or more because of a conviction of a crime involving moral turpitude within five years after his entry. A hearing was held in San Quentin on October 4, 1929, at which appellant waived his right to counsel, admitted the truth of the statement made on May 14, 1929, and stated that his trips to Mexico in 1926 were in the course of his employment in a produce business and that he "never did stay over there more than an hour and a half at any time." The Inspector found that the charge contained in the warrant of arrest was sustained and recommended deportation. On November 30, 1929, appellant was released

1. In a sworn statement, dated August 8, 1957 (Exhibit 3 of certified record, Ex. 1) appellant claimed first entry to the United States about October 12, 1912, at the port of Providence, Rhode Island. In statements of March 14, 1929 and May 14, 1929, he claimed first entry at New York on October 8, 1916.

from San Quentin on parole to the custody of the United States Department of Labor for deportation. On December 2, 1930, he was deported.

Three entries as a non-immigrant were effected in 1951 and 1953.[2] At no time prior to 1957 did appellant claim that he was entitled to entry in the United States because of any illegality in the deportation of 1930. No application was made to the Attorney General for consent to apply for admission in accordance with 8 U.S.C.A. § 1182(a)(17).[3]

On June 29, 1957, appellant re-entered the United States without a visa.[4] On August 22, 1957, a hearing was held on an order to show cause. Appellant was found to be an alien who had unlawfully re-entered the United States, having previously been deported on a ground described in 8 U.S.C.A. §§ 1252(e), 1251

(a)(4)[5]—conviction of a crime involving moral turpitude committed within five years after entry. In accordance with 8 U.S.C.A. 1252(f),[5] the previous order of deportation was deemed to be reinstated from its original date and appellant was ordered deported thereunder.

An appeal to the Board of Immigration Appeals was dismissed January 6, 1958. A petition for a writ of habeas corpus was filed January 9, 1958, and the writ was denied on February 12, 1958.

Appellant contends that the trial court erred in refusing to review the 1929 deportation proceedings for fairness, evidence to support the finding, and for error of law. Specifically it is contended that there was a lack of due process in that: (1) the only evidence of an entry

---

2. This appears from appellant's statement, Exhibit 3, and his passport, Exhibit 4, contained in certified record. (Ex. 1).

3. 8 U.S.C.A. § 1182 (Immigration and Nationality Act 1952, § 212) (a) "Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States; * * * (17) Aliens who have been arrested and deported, * * * unless prior to their embarkation or re-embarkation at a place outside the United States or their attempt to be admitted from foreign contiguous territory the Attorney General has consented to their applying or reapplying for admission."

4. In a sworn statement given to the Immigration and Naturalization Service on August 9, 1957 (Exhibit 3 of certified record, Ex. 1) appellant stated that at his entry on June 29, 1957, he presented his "Portuguese passport, opened to the page which contains an American visa, and the officer permitted me to pass." This visa, appearing on page 19 of the passport (Exhibit 4) was dated November 20, 1951, valid for not more than 24 months, as a Section 3(d) Temporary Visitor. Appellant expressly admitted that he was not in possession of any document which entitled him to enter the country.

8 U.S.C.A. § 1252 (Immigration and Nationality Act 1952, § 242)

* * * * *

"(e) Any alien against whom a final order of deportation is outstanding by reason of being a member of any of the classes described in paragraphs (4) * * * of section 1251 (a) of this title * * *.

* * * * *

(f) Should the Attorney General find that any alien has unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation, whether before or after June 27, 1952, on any ground described in any of the paragraphs enumerated in subsection (e) of this section, the previous order of deportation shall be deemed to be reinstated from its original date and such alien shall be deported under such previous order at any time subsequent to such reentry. For the purposes of subsection (e) of this section the date on which the finding is made that such reinstatement is appropriate shall be deemed the date of the final order of deportation."

8 U.S.C.A. § 1251 (Immigration and Nationality Act 1952, § 241).

"(a) Any alien in the United States * * * shall, upon the order of the Attorney General, be deported who—

* * * * *

"(4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, * * *."

is the admissions attributed to appellant, who was an infant, and that an infant cannot effectively admit; (2) appellant did not intelligently waive his right to be represented by counsel and as a minor could not legally do so; (3) the alleged "entry" did not in fact constitute an entry within the Act.

Appellee contends: (1) that Section 1252(f), 8 U.S.C.A. requires the determination of the essential elements of identity, prior deportation, and unlawful entry to reinstate the previous order and the court cannot review the administrative records out of which the prior order was made; (2) assuming the court may review the old record, a showing of gross miscarriage of justice must be made, and no such showing has been made; (3) assuming the record is reviewed, the court must conclude that the hearing was fair, that there was due process, that the evidence supports the findings, and that there was no erroneous application of law.

Pursuant to order of deportation, appellant departed from the United States on December 2, 1930. He entered the United States on June 29, 1957, without a visa or other document required by 8 U.S.C.A. §§ 1181, 1182(a) (20). At that time he had been away for over 26 years except for temporary visits as a nonimmigrant in 1951 and 1953. Even assuming that a 26 year absence could be construed as temporary, within the meaning of section 1181(b),[6] appellant has admitted that he did not apply for or receive permission to enter from the Attorney General subsequent to his deportation on December 2, 1930.

■■■ Under these facts, when appellant entered the United States on June 29, 1957, he was a deportable alien within the meaning of 8 U.S.C.A. § 1251(a) (1), by reason of his lack of a visa or other document permitting entry. This is the basic and substantive ground of deportation. While the warrant recites that deportation was pursuant to "Sec. 242(f) of the Immigration and Nationality Act" (8 U.S.C.A. § 1252(f)) for unlawful re-entry after having been deported, this section is a procedural and enforcement provision. A hearing was held pursuant to this section and relevant regulations,[7] and the required findings were made with respect to appellant's identity, prior deportation as a member of a class described in 8 U.S.C.A. § 1251 (a) (4), and his unlawful re-entry. On the basis of such findings the order for deportation was properly reinstated pursuant to section 1252(f). But, as Judge Weinfeld said in United States ex rel. Blankenstein v. Shaughnessy, D.C., 112 F.Supp. 607, 610, 611, "the ground of deportability of an alien who illegally reentered after a prior final order of deportation is predicated not upon § 242 (f) (8 U.S.C.A. 1252(f)), but upon § 241(a) (1) (1251(a) (1)) of the Act." There was a full compliance with the applicable statutes and regulations.

■■■ Appellant's entire case is based upon alleged infirmities in the deportation order in 1930. As the trial judge well said, "The petitioner would have this court disinter his first deportation order which was issued in 1930 and examine the evidence on which it was based." Yet for a period of more than 26 years, between his deportation in 1930 and entry in 1957, appellant did not seek any review of the order of deportation or question its validity. He did not seek permission for entry from the Attorney General under either sections 1182(a) (17) or 1181(b). He did not seek lawful entry under sections 1182 or 1226. Under these circumstances the order of deportation of 1930 is not subject to collateral attack in this proceeding.

6. 8 U.S.C.A. § 1181(b) provides that "aliens lawfully admitted for permanent residence who depart from the United States temporarily may be readmitted to the United States by the Attorney General in his discretion without being required to obtain a passport, immigrant visa, reentry permit or other documentation."

7. 8 C.F.R. §§ 242.6, 242.3, 242.22.

This conclusion is strengthened by 8 U.S.C.A. § 1101(g): "For the purposes of this chapter any alien ordered deported (whether before or after the enactment of this chapter) who has left the United States, shall be considered to have been deported in pursuance of law, irrespective of the source from which the expenses of his transportation were defrayed or of the place to which he departed." In our opinion appellant must be "considered to have been deported in pursuance of law," particularly in view of the long period of acquiescence in the deportation order.[8]

This view is in accord with the decision of the second circuit in United States ex rel Koehler v. Corsi, 1932, 60 F.2d 123,—a case involving review of an order excluding an alien who had previously been ordered deported. The court had occasion to consider the words "in pursuance of law" now found in § 1101 (g), which at that time appeared in 8 U.S.C.A. § 180. That alien started to seek a review of the deportation order by a habeas corpus proceeding, which he lost in the district court. He took an appeal which he withdrew. He was then actually deported. The court said: "Such deportation was therefore one 'in pursuance of law' as the expression is used in 8 U.S.C.A. § 180. What is sometimes called the law of the case became fixed when the decision of the District Court became final, and it is now too late to attack that deportation as one not in pursuance of law." 60 F.2d at page 123.

Assuming, arguendo, that the 1930 deportation order is subject to attack in this proceeding, was there a gross miscarriage of justice or denial of due process? In United States ex rel. Steffner v. Carmichael, 1950, 183 F.2d 19, 20, a case similar in many respects to the instant case, the Court of Appeals for the Fifth Circuit well said: "Where an alien has been deported from the United States pursuant to a warrant of deportation, we do not think it permissible to allow a collateral attack on the previous deportation order in a subsequent deportation proceeding, unless we are convinced that there was a gross miscarriage of justice in the former proceedings."[9] See also Daskaloff v. Zurbrick, 6 Cir., 1939, 103 F.2d 579.

██ We recognize that although deportation is not technically a criminal proceeding, the "liberty of an individual is at stake" and "meticulous care must be exercised less the procedure by which he is deprived of that liberty not meet the essential standards of fairness." Bridges v. Wixon, 1945, 326 U.S. 135, 154, 65 S.Ct. 1443, 1452, 89 L.Ed. 2103. On the other hand, as the Supreme Court pointed out in Bilokumsky v. Tod, 1923, 263 U.S. 149, 157, 44 S.Ct. 54, 57, 68 L.Ed. 221: "To render a hearing unfair the defect, or the practice complained of, must have been such as might have led to a denial of justice, or there must have been absent one of the elements deemed essential to due process."

8. Even though appellant was a minor at the time of the hearing before the Immigration Inspector, he was past 21 years of age when he left the United States pursuant to the order of deportation. For more than 26 years thereafter he maintained a permanent residence abroad.

9. The court continued: "There are numerous cases where aliens have been deported several times, and if in each subsequent case the validity of the previous deportation order had to be determined, there would be no end to the proceedings cast upon administrative agencies.

"Appellant did not elect to test the validity of his 1936 deportation order. He had his day before the immigration authorities, who decided that he should be deported. There is no showing that his failure to test the validity of this order was due to any cause other than his desire not to do so. Even if we were to concede that we should examine the order entered in his 1936 deportation proceeding, appellant would not be in any better position than he is now, because we are of the opinion that such order was valid when entered, and, since it has not been set aside in any way, it remains valid." 183 F.2d at pages 20, 21.

In urging denial of due process and lack of evidence to support the administrative finding, appellant relies primarily upon his contention that as an infant he could not effectively admit or waive his right to counsel. The first admission was made on March 14, 1929, when appellant was 19 years, 9 months of age, and the second admission on October 4, 1929, when he was 20 years, 4 months of age. At the hearing on October 4th he waived counsel.[10]

In support of his contention that an admission of a minor is not binding, appellant relies upon White v. Miller, 1895, 158 U.S. 128, 146, 15 S.Ct. 788, 39 L.Ed. 921; Bank of United States v. Ritchie, 1834, 8 Pet. 128, 33 U.S. 128, 8 L.Ed. 890, and similar cases, in which the admissions were made by a guardian ad litem in a pleading filed on behalf of infant defendants. Moreover, in White v. Miller the answer of the guardian ad litem was "in the handwriting of the solicitor for the complainant." [158 U. S. 128, 15 S.Ct. 795]. In Bank of United States v. Ritchie, the guardian ad litem had been appointed on motion of counsel for plaintiff, "without bringing the minors into court, or issuing a commission for the purpose of making the appointment." As the court said, "The adversary counsel is not the person to name the guardian to defend the infant." The court pointed out also that although

the infants had parents living, a person "not shown to be connected with them was appointed their guardian ad litem." The facts in those cases illustrate the reason for the rule that a guardian ad litem may not admit away the rights of an infant, and that the adverse party must be held to strict proof.

This does not mean, however, that in a proper case a minor's own admissions are not binding upon him. The distinction was pointed out by the Missouri Supreme Court in Gebhardt v. United Railways Company, Mo.1920, 220 S.W. 677, 679, 9 A.L.R. 1076, 1080–1081, where the court said: "It is true that a guardian ad litem of an infant, in his answer, or his next friend, in his petition, cannot admit away the rights of the infant. But it does not follow from this that the infant himself, if of sufficient age and discretion to make him a competent witness, could not be required to testify to the truth, although by doing so the infant's cause or defense would be destroyed. If he is competent to tell the truth against himself in court, he is also competent to tell the truth by making admissions against himself out of court."

■■ A statutory definition of minority, without more, does not in itself render inadmissible confessions or admissions of an infant.[11] Whether the

10. The report of the hearing on October 4, 1929, contains the following proceedings with respect to waiver of counsel:

"Q. You are advised that under these proceedings you have the right to be represented by counsel. Do you desire to obtain the services of a lawyer? A. No. I can handle this myself.

"Q. Do you waive your right to be represented by an attorney and are you now ready and willing to proceed with this hearing? A. Yes.

"Q. You are advised that Attorney W. D. Hahesy, of Tulare, California, has stated that he wished to be present at this hearing. Is it your wish that he be present at this hearing and represent you in these proceedings? A. No. He was not hired by me. I don't want his services whatsoever.

"Q. You waive your right to the services of Attorney Hahesy? A. Yes."

11. We find no federal statutes or regulations defining minority or making special provisions for minors in deportation proceedings except a regulation promulgated under the Immigration and Nationality Act, 1952, providing that "in the case of a child under sixteen years of age, a copy of the order (to show cause) and of the warrant of arrest, if issued, shall be served upon such respondent's guardian, near relative, or friend, whenever possible."

Under California law (Cal.Civ.Code, § 25) persons under 21 years of age, are minors; and in a civil action or proceeding, a minor must appear either by a general guardian or guardian ad litem (Cal.Code Proc. §§ 372–373). These statutes are not, in our opinion, controlling with respect to admissions and waiver of counsel by minors.

confession or admission is competent depends not alone upon the infant's age, but also upon his intelligence, education, information, understanding and ability to comprehend. See Gilbert v. State, 1953, 159 Tex.Cr.R. 424, 265 S.W.2d 100; State v. Watson, 1946, 114 Vt. 543, 49 A.2d 174; Johnson v. Commonwealth, 1945, 184 Va. 466, 35 S.E.2d 770; Commonwealth v. Preece, 1885, 140 Mass. 276, 5 N.E. 494; 22 C.J.S. Criminal Law § 829, Confessions by Children, p. 1452; 4 Wigmore, Evidence, § 1053 (3d ed. 1940) and cases cited therein; Conrad, Modern Trial Evidence, Vol. 1, §§ 456, 553.[12]

■ The same factors should be considered in determining whether an infant is competent to waive counsel. In Williams v. Huff, 1944, 79 U.S.App.D.C. 31, 142 F.2d 91, 94, the Court of Appeals for the District of Columbia had under consideration habeas corpus proceedings where a 17 year old boy had waived his right to counsel in a criminal case. While the author of the opinion would have held as a matter of law that a boy of 17 cannot competently waive his right to counsel in a criminal case, the majority of the court took the position that the "appellant's competence was a question of fact, in the determination of which his youth was entitled to serious consideration but was not necessarily conclusive," and that the "District Court should take evidence and determine whether, in the light of his age, education, and information, and all other pertinent facts, he has sustained the burden of proving that his waiver was not competent and intelligent." See also Curtis v. Hiatt, 3 Cir., 1947, 161 F.2d 621; Shioutakon v. District of Columbia, 1956, 98 U.S.App.D.C. 371, 236 F.2d 666, 60 A.L.R.2d 686; McBride v. Jacobs, 1957, 101 U.S.App.D.C. 189, 247 F.2d 595, cf. Dooling v. Overholser, 1957, 100 U.S. App.D.C. 247, 243 F.2d 825.

■ Appellant was 19 (almost 20) when he first made his written admission. He was 20 when he waived counsel and again admitted the truth of his original statement. In a collateral attack 28 years later, we cannot assume that he was not competent to make either the admissions or the waiver.

■ It is appellant's final contention that there was in fact "no entry" in 1926 and accordingly an erroneous application of law in the 1930 deportation order. In our opinion, this question is not open to collateral attack in this proceeding, and we find no gross miscarriage of justice in the findings resulting in the deportation order.

We conclude (1) that appellant's entry on June 29, 1957 was unlawful; (2) that the deportation order of 1930 is not subject to collateral attack; and (3) that in any event appellant has failed to show any denial of due process in the deportation proceedings or any gross miscarriage of justice in the order entered.

Judgment affirmed.

12. "Although an infant, because of his age, may be excluded from testifying when he becomes a party to a suit, his acts and declarations are receivable against him, subject to the limitation that his admissions cannot be given the effect of imposing contractual liability which the law permits an infant to avoid. Admissions of a child of tender age should be received with caution and it must be shown that he had sufficient understanding to relate the facts admitted. Thus, it is said that an infant's admissions are generally receivable in evidence. On the other hand, it is observed that an infant cannot himself make or authorize any one for him to make admissions against his interest. Conrad, Modern Trial Evidence, Vol. 1, § 456, pgs. 357–358.

"It appears from the decisions, where no specific statute controls, that the admissibility of the confession of an infant depends not upon his age but upon the circumstances developed, the child's intelligence and his ability to comprehend being the main factor. Of course, the age of the child is an important factor to be considered in determining the voluntary nature of the confession. The courts have refused to admit confessions of infants where the facts showed their mental immaturity and perhaps fear." Id., § 553, p. 443.