**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 4 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JESUS MANUEL YANEZ-TORRES,

Petitioner,

v.

IMMIGRATION &
NATURALIZATION SERVICE,

Respondent.

No. 99-9504
(No. A20679872)
(Petition for Review)

**ORDER AND JUDGMENT** *

Before **EBEL** , **KELLY** , and **BRISCOE** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Jesus Manuel Yanez-Torres challenges the reinstatement of his June 22, 1981 deportation order pursuant to 8 U.S.C. § 1231(a)(5) (Supp. 1998), and his subsequent deportation to Mexico on January 19, 1999. We have jurisdiction to review the final order reinstating the 1981 deportation order under 8 U.S.C. § 1252(a)(1) (Supp. 1998) (review of final orders of removal), and we affirm.

## I. Background facts and proceedings

Petitioner, a native and citizen of Mexico, has a lengthy history of illegal entries into and deportations from the United States, beginning in 1972. In 1973 petitioner, who had illegally entered the United States without inspection, was given thirty days to voluntarily depart because his infant daughter was ill. *See* R. at 357. Several extensions of his voluntary departure date were granted due to his child's illness, extending his stay to November 1, 1974. *See id.* at 353-54. The record does not indicate whether he departed by that date.

In October 1976 petitioner was apprehended while illegally entering the United States. *See id.* at 348. Although no document in the record evinces the actual issuance of a priority date by a United States consular official, *see also* R. at 320 (stating in 1981 that petitioner's claim that he had a visa priority date of August 12, 1976, was not documented), the immigration officer noted that petitioner claimed a priority date of August 12, 1976, and granted petitioner

-2-

a six-month extension to depart from June 22, 1977. *See id.* An additional extension was granted to July 16, 1978. *See id.* at 340. On November 6, 1979, petitioner applied for, and was apparently granted, a one-year extension on his statement that he was still awaiting a consulate appointment under *Silva v. Levi*, No. 76-C-4268 (N.D. Ill. Mar. 10, 1977).[1] *See id.* at 303, 335, 337.

Petitioner was arrested again on June 9, 1980, while illegally entering the United States, *see id.* at 332, and he was ordered to be deported on June 16, 1980. *See id.* at 325. Petitioner either never left or illegally reentered the United States,

---

[1] The court in *Silva* issued an injunction enjoining the INS from deporting certain Western Hemisphere aliens, including those from Mexico, with visa priority dates between July 1, 1968, and December 31, 1976, because of an erroneous allocation of visas. *See Ventura-Escamilla v. INS*, 647 F.2d 28, 29 n.2 (9th Cir. 1981). A "*Silva* notice" or letter informed the alien that the INS would be "taking no action on [your] case until further order from the Court. This means that you are permitted to remain in the United States without threat of deportation or expulsion until further notice." *Bagues-Valles v. INS*, 779 F.2d 483, 484 (9th Cir. 1985). When the *Silva* injunction was vacated on November 1, 1981, because all of the "recaptured visas" had been issued by October 1981, the INS proceeded with deportation actions against those who had still not received visas. *See Silva* Order of Dec. 18, 1981 (attached as Addendum C to Respondent's Br.). While the record indicates that petitioner's wife may have had *Silva* status in 1980, *see* R. at 303, it appears that petitioner has never had such status. *See* R. at 322 (March 19, 1981 memorandum stating that petitioner's attorney appeared in the Denver immigration office "to request Silva letter for his client" and noting that petitioner's wife had "recently been approved issuance of a Silva Letter.") Even if petitioner once had *Silva* status, however, once he left the United States and illegally reentered after March 11, 1977, he may have lost the protection of the injunction because, under the express provisions of the injunction, "[n]o alien who entered the United States on or after March 11, 1977 shall be protected by this order." *Silva* Temporary Restraining Order issued April 1, 1977, at 2 (attached as Addendum A to Respondent's Br.).

-3-

and he was ordered to surrender for investigative processing on March 19, 1981. *See id.* at 322. On June 22, 1981, petitioner was again found to be deportable and was granted voluntary departure with the deportation order to automatically become effective on August 22, 1981, if petitioner failed to depart. *See id.* at 197. Petitioner did not appeal from that order. The Immigration and Naturalization Service (INS) denied his August 1981 request to apply for admission after deportation. *See id.* at 317, 320-21. Although his wife told immigration officials in 1982 that petitioner left the United States in accordance with the order granting voluntary departure, *see id.* at 211, petitioner was again arrested in the United States on January 11, 1985, and the 1981 deportation order was immediately executed at the INS's expense. *See id.* at 162, 217.

Petitioner again illegally reentered the United States in January or November 1985, *compare id.* at 106 *with id.* at 251, and in 1997 again applied for an adjustment of status, *see id.* at 109-112. In his application, he swore that he had been in the United States since 1972 except for one week in 1982, and that he had never been deported. *See id.* at 109, 111.

On January 11, 1999, petitioner was notified that the INS intended to reinstate his 1981 deportation order and was given an opportunity to respond. *See id.* at 106. A final order was issued on January 18, 1999, and he was deported

to Mexico by the INS on January 19, 1999, *see id.* at 103. He filed a petition for review on February 12, 1999.

## II. Jurisdiction

Citing 8 U.S.C. § 1252 (Supp. 1998), respondent argues that, while this court may review the propriety of the reinstatement of the 1981 deportation order, we lack jurisdiction to entertain a collateral attack on the validity of the order itself. We agree. Section 1252(d)(1) provides that a final order of removal may be judicially reviewed only if "the alien has exhausted all administrative remedies available to the alien as of right." Further, § 1231(a)(5) provides that a removal order that is reinstated on the basis of a subsequent illegal entry "is not subject to being reopened or reviewed." Because petitioner failed to timely exhaust his administrative remedies or to timely seek review of the 1981 deportation order, we do not now have jurisdiction to review the underlying validity of that order. *Cf. De Souza v. Barber*, 263 F.2d 470, 474 (9th Cir. 1959) (holding that alien whose deportation order had been reinstated pursuant to this section (under prior law) but who did not seek review of the order or question its validity when initially issued may not collaterally attack the order in habeas proceedings following deportation after reinstatement). We therefore do not address petitioner's argument that the *Silva* injunction somehow "voided" the 1981 deportation order.

-5-

### III. Discussion

A. Application of the reinstatement statute. Under § 1231(a)(5),

> [i]f the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

This section was formerly codified in essentially the same language at 8 U.S.C. § 1252(f) (1994), and has been part of the immigration law at least since 1952. *See, e.g., Mesina v. Rosenberg*, 278 F.2d 291, 294 & n.5 (9th Cir. 1960). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104-208, Div. C, 110 Stat. 3009 (1996), amended and recodified certain provisions of immigration law, including this section.

Petitioner argues that if the INS has authority to reinstate deportation orders, then petitioner must be deemed to have been in deportation proceedings as of January 11, 1999, and that the Attorney General therefore improperly applied § 1231(a)(5) retroactively. We reject this argument. In general, section 309(a) of IIRIRA provides that the effective date of IIRIRA's amendments was April 1, 1997. For aliens who were in exclusion or deportation proceedings on that date, however, transitional rules applied pre-amendment law in most cases. *See* § 309(c)(1); *Reno v American-Arab Anti-Discrimination Comm*., 119 S. Ct. 936,

940-41 (1999). Even if petitioner were deemed to have been in deportation proceedings on January 11, 1999, an alien is subject to the transitional rules only if he was in deportation proceedings on April 1, 1997. Clearly, petitioner was not involved in any deportation proceedings on that date even though he was illegally present in the United States at that time. Further, even if petitioner had been subject only to pre-IRRIRA law, the Attorney General still could have properly reinstated the 1981 deportation order under the former section providing for reinstatement and removal.

B. *Failure to verify petitioner's identity through fingerprinting.* Petitioner next argues that his removal under § 1231(a)(5) was illegal because the immigration regulations provide that, in disputed cases, the verification of identity must be accomplished by a comparison of fingerprints between the previously deported alien and the alien subject to the reinstatement proceedings. Petitioner has never disputed and does not now dispute, however, that he is in fact the alien deported pursuant to the June 22, 1981 order of deportation. The INS properly identified him as such and was not required to conduct a fingerprint comparison.

C. *Alleged due process violation.* Without citing any authority or producing any record to this court that supports his allegations, petitioner argues that he was denied due process of law because he could not make an application

-7-

for cancellation of removal under 8 U.S.C. § 1229(a)(1) due to the Board of Immigration Appeals' (BIA) failure for a period of ten years to rule on his appeal from the INS's denial in 1988 of his application for adjustment of status under a limited legalization program. He fails to state how the BIA's failure to rule "prevented" him from applying for cancellation of removal, and we find no merit to his claim.

The INS's final order dated January 18, 1999, reinstating and executing petitioner's 1981 order of deportation is AFFIRMED.

Entered for the Court

David M. Ebel
Circuit Judge