## RABANG *v.* BOYD, DISTRICT DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE.

No. 403.   Argued May 1, 1957.—Decided May 27, 1957.

*John Caughlan* argued the cause and filed a brief for petitioner.

*J. F. Bishop* argued the cause for respondent. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Olney* and *Beatrice Rosenberg.*

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The petitioner, born in 1910 in the Philippine Islands, has lived in the continental United States since 1930, when he was admitted for permanent residence. In February 1951, he was convicted upon a plea of guilty of violating the federal narcotics laws. He was taken into custody in March 1951, and, after administrative proceedings, was ordered deported under the Act of February 18, 1931, as amended, which provided for the deportation of "any alien" convicted of violating a federal narcotics law.[1]

Petitioner applied to the District Court for the Western District of Washington for a writ of habeas corpus and declaratory relief from the order of the Immigration and Naturalization Service deporting him to the Philippine

---

[1] The Act of February 18, 1931, as amended, provided:

". . . [A]ny alien (except an addict who is not a dealer in, or peddler of, any of the narcotic drugs mentioned in this Act) who, after . . . [February 18, 1931], shall be convicted for violation of or conspiracy to violate any statute of the United States or of any State, Territory, possession, or of the District of Columbia, taxing, prohibiting, or regulating the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, or any salt, derivative, or preparation of opium or coca leaves, shall be taken into custody and deported in manner provided in sections 19 and 20 of the Act of February 5, 1917, entitled 'An Act to regulate the immigration of aliens to, and the residence of aliens in, the United States.' " 46 Stat. 1171, as amended, 54 Stat. 673, 8 U. S. C. (1946 ed.) § 156a.

Islands. The District Court denied the petitioner's application, and the Court of Appeals for the Ninth Circuit affirmed.[2] We granted certiorari.[3]

The sole issue for decision is whether the petitioner is deportable as an alien within the meaning of the 1931 Act. The parties agree that the petitioner was a national of the United States at birth and when he entered the continental United States for permanent residence. Under the 1898 Treaty of Paris, Spain ceded the Philippine Islands to the United States.[4] Article IX of the Treaty provided that ". . . [t]he civil rights and political status of the native inhabitants . . . shall be determined by the Congress." [5] Pursuant to that Article, the Congress declared, *inter alia,* in the Act of July 1, 1902, that Filipinos born in the Islands after 1899 were to ". . . be citizens of the Philippine Islands and as such entitled to the protection of the United States . . . ." [6] The Filipinos, as nationals, owed an obligation of permanent allegiance to this country.[7]

Upon the proclamation of Philippine independence on July 4, 1946,[8] § 14 of the Philippine Independence Act of 1934 became operative. Section 14 provided:

> "Upon the final and complete withdrawal of American sovereignty over the Philippine Islands the

---

[2] 234 F. 2d 904.  [4] 30 Stat. 1754.

[3] 352 U. S. 906.  [5] *Id.,* at 1759.

[6] 32 Stat. 691, 692; compare 39 Stat. 545, 546.

[7] Compare § 101 of the Nationality Act of 1940, which defines the term "national" as follows:

"(a) The term 'national' means a person owing permanent allegiance to a state.

"(b) The term 'national of the United States' means . . . (2) a person who, though not a citizen of the United States, owes permanent allegiance to the United States. It does not include an alien." 54 Stat. 1137, 8 U. S. C. (1946 ed.) § 501.

[8] Presidential Proclamation No. 2695, 60 Stat. 1352, 11 Fed. Reg. 7517; Presidential Proclamation No. 2696, 60 Stat. 1353, 11 Fed. Reg. 7517.

immigration laws of the United States (including all
the provisions thereof relating to persons ineligible
to citizenship) shall apply to persons who were born
in the Philippine Islands to the same extent as in
the case of other foreign countries." 48 Stat. 464,
48 U. S. C. (1946 ed.) § 1244.

The Court of Appeals held that the petitioner lost his
status as a national when the United States relinquished
its sovereignty over the Islands on July 4, 1946, and that
this occurred regardless of his residence in the continental
United States on that date.[9]

The petitioner argues that his status as a national,
acquired at birth under the Treaty and the 1902 statute,
bears such close relationship to the constitutionally
secured birthright of citizenship acquired by the Ameri-
can-born, that its divestiture should rest only upon the
most explicit expression of congressional intention. In
the Independence Act, the Congress granted full and com-
plete independence to the Islands, and necessarily sev-
ered the obligation of permanent allegiance owed by Fili-
pinos who were nationals of the United States. Anything
less than the severance of the ties for all Filipinos, regard-
less of residence in or out of the continental United States,
would not have fulfilled our long-standing national policy
to grant independence to the Philippine people. See
*Hooven & Allison Co.* v. *Evatt,* 324 U. S. 652, 674–678,
692. Section 14 of the Independence Act in clear lan-
guage applies "to persons who were born in the Philippine
Islands." This language demonstrates, and we hold, as
did the courts below, that persons born in the Islands,
and who thereby were nationals of the United States,

---

[9] The Court of Appeals for the Ninth Circuit has consistently fol-
lowed this principle. *E. g., Resurreccion-Talavera* v. *Barber,* 231
F. 2d 524; *Gonzales* v. *Barber,* 207 F. 2d 398, aff'd on other grounds,
347 U. S. 637; *Mangaoang* v. *Boyd,* 205 F. 2d 553; *Cabebe* v.
*Acheson,* 183 F. 2d 795; cf. *Banez* v. *Boyd,* 236 F. 2d 934.

became aliens on July 4, 1946, regardless of permanent residence in the continental United States on that date.

The petitioner contends that, because he was admitted for permanent residence at the time the Islands were a territory of the United States, he did not enter from a foreign country and therefore cannot be an alien within the purview of the 1931 Act. He relies on *Barber* v. *Gonzales,* 347 U. S. 637, where this Court held that a Filipino admitted for permanent residence in 1930 was not deportable under § 19 (a) of the Immigration Act of 1917 as an alien sentenced for certain crimes "committed . . . *after entry."* (Emphasis added.) The word "entry" was held to be significant of a congressional purpose to limit deportation under § 19 (a) to aliens arriving "from some foreign port or place," a description which did not fit a territory belonging to the United States. But the 1931 Act differs from the 1917 Act because it is silent as to whether "entry" from a foreign country is a condition of deportability. By its terms, the 1931 Act applies to ". . . any alien . . . who, after . . . [February 18, 1931], shall be convicted . . ." of a federal narcotics offense. It follows that the holding in *Gonzales* is not applicable.

The petitioner argues that the requirement of "entry," as construed in *Gonzales,* was incorporated into the 1931 Act by the provision that deportation shall be accomplished "in manner provided in sections 19 and 20" of the Immigration Act of 1917.[10] We hold that the reference

---

[10] The "manner provided" in § 19 of the Immigration Act of 1917, 39 Stat. 889, as amended, 8 U. S. C. (1946 ed.) § 155, was "upon the warrant of the Attorney General." Section 20, 39 Stat. 890, as amended, 8 U. S. C. (1946 ed., Supp. IV) § 156, related to ports to which aliens are to be deported, costs of deportation and other details. The Attorney General is required by that section to deport "to the country specified by the alien, if it is willing to accept him into its territory." In the administrative proceedings the petitioner specified the Philippine Islands.

to the "manner provided" in those sections draws into the 1931 Act only the procedural steps for securing deportation set forth in those sections. *Bugajewitz* v. *Adams,* 228 U. S. 585. The Congress adopted these procedures by reference instead of spelling them out in the 1931 Act.[11]

The petitioner urges finally that the requirement of "entry" is implicit in the 1931 Act. Citing *Fong Yue Ting* v. *United States,* 149 U. S. 698, he argues that the bounds of the power to deport aliens are circumscribed by the bounds of the power to exclude them, and that the power to exclude extends only to "foreigners" and does not embrace Filipinos admitted from the Islands when they were a territory of the United States. It is true that Filipinos were not excludable from the country under any general statute relating to the exclusion of "aliens." See *Gonzales* v. *Williams,* 192 U. S. 1, 12–13; *Toyota* v. *United States,* 268 U. S. 402, 411.

But the fallacy in the petitioner's argument is the erroneous assumption that Congress was without power to legislate the exclusion of Filipinos in the same manner as "foreigners." This Court has held that ". . . the power to acquire territory by treaty implies not only the power to govern such territory, but to prescribe upon what terms the United States will receive its inhabitants, and what their *status* shall be . . . ." *Downes* v. *Bidwell,* 182 U. S. 244, 279.[12] Congress not only had, but exercised,

---

[11] It is not contended that the procedures specified in §§ 19 and 20 were not followed in this case.

[12] See Magoon, Reports (1902), 120:

"The inhabitants of the islands acquired by the United States during the late war with Spain, not being citizens of the United States, do not possess the right of free entry into the United States. That right is appurtenant to citizenship. The rights of immigration into the United States by the inhabitants of said islands are no more than those of aliens of the same race coming from foreign lands."

Illustrative of the scope of the congressional power is the treatment afforded Puerto Ricans who were first nationals, 31 Stat. 77, 79, and

the power to exclude Filipinos in the provision of § 8 (a)(1) of the Independence Act, which, for the period from 1934 to 1946, provided:

"For the purposes of the Immigration Act of 1917, the Immigration Act of 1924 (except section 13 (c)), this section, and all other laws of the United States relating to the immigration, exclusion, or expulsion of aliens, citizens of the Philippine Islands who are not citizens of the United States shall be considered as if they were aliens. For such purposes the Philippine Islands shall be considered as a separate country and shall have for each fiscal year a quota of fifty. . . ." 48 Stat. 462, 48 U. S. C. (1934 ed.) § 1238.

The 1931 Act plainly covers the situation of the petitioner, who was an alien, and who was convicted of a federal narcotics offense. Cf. *United States ex rel. Eichenlaub* v. *Shaughnessy*, 338 U. S. 521. We therefore conclude that the petitioner was deportable as an alien under that Act. The judgment is

*Affirmed.*

MR. JUSTICE DOUGLAS, dissenting.

The Act of February 18, 1931, 8 U. S. C. (1946 ed.) § 156a, provided for the deportation of "any alien" convicted of violating a narcotic law after the date of the Act. Petitioner is a citizen of the Philippines and is therefore an alien by virtue of the Philippine Independence Act, 48 Stat. 456, c. 84, § 8; and he was convicted of narcotics violation in 1951, which was after his status had been changed from a national to an alien. If the 1931 Act is to be read literally, the deportation of this Filipino is war-

who later became citizens, 39 Stat. 951, 953. See also *Downes* v. *Bidwell*, 182 U. S. 244, 280, as to the status of the inhabitants of other territories acquired by the United States.

ranted. But to read the Act literally is, I think, to miss its real import.

*First.* In 1931 the only aliens here were those who had made an "entry" into this country. The condition of "entry" seems, therefore, necessarily implicit in the 1931 Act. Without that condition the Act would have had no application whatsoever at the time of its passage, for at that time every "alien" was a national of another country who had "entered" here. While the Philippine Independence Act later made Filipinos "aliens," that class of "aliens" who were resident here at the time never made an "entry" into this country. As *Barber* v. *Gonzales,* 347 U. S. 637, holds, they were nationals to whom the concept of "entry" was inapplicable.

*Second.* The 1931 Act provides that the offending alien shall be deported "in [the] manner" provided in §§ 19 and 20 of the 1917 Act, 8 U. S. C. (1946 ed.) §§ 155, 156. The words "in [the] manner" are said to refer to the means for securing deportation which, by § 19 (a) of the 1917 Act, are described as "upon the warrant of the Attorney General." *Bugajewitz* v. *Adams,* 228 U. S. 585, 591, construed the language of an earlier deportation Act in that way. It held that "in the manner provided" in that Act meant "the means for securing deportation." Yet it is difficult for me to say that by that ruling "in the manner" became words of art in legislative drafting. The *Bugajewitz* case involved a statute with a very special legislative history. The words "in the manner provided" had been substituted for "as provided." So it was apparent that Congress by the amendment had narrowed the meaning. There is no such special legislative history here. The words "in the manner" seem to me to be synonymous in this setting with "as provided" or "under the conditions of." And the condition of the 1917 Act most relevant here is a crime committed "after entry."

No matter how the case is viewed, the 1931 Act is applicable only to aliens who had made an "entry" in this country.

This Filipino came to the United States in 1930 and he has never left here. If the spirit of the 1931 Act is to be observed, he should not be lumped with all other "aliens" who made an "entry." The Filipino alien, who came here while he was a national, stands in a class by himself and should remain there, until and unless Congress extends these harsh deportation measures to his class.