Max Asuncion TUGADE, Appellant,

v.

Richard C. HOY, District Director, Immigration and Naturalization Service, Appellee.

No. 16070.

United States Court of Appeals
Ninth Circuit.

March 30, 1959.

Robert H. Green, Lloyd A. Tasoff, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Richard A. Lavine, Henry P. Johnson, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before BARNES, HAMLEY and HAMLIN, Circuit Judges.

PER CURIAM.

Appellant, appealing from an adverse decision below where he sought review of the order of deportation affecting him, raises for the first time on this appeal four matters, and cites one case not directly in point.

Appellant urges: (1) that Presidential Proclamation No. 2696 [1], 22 U.S.C.A. §

1. 60 Stat. 1353 (1946):
"Immigration Quota for Philippine Islands By The President Of The United States Of America
A Proclamation
"Whereas the Secretary of State, the Secretary of Commerce, and the Attorney General have reported to the President

that pursuant to the duty imposed and the authority conferred upon them in and by sections 11 and 12 of the Immigration Act of 1924 approved May 26, 1924 (43 Stat. 159, 161) and Reorganization Plan No. V (3 CFR Cum.Supp., Ch. IV), they jointly have made the revision provided for in section 12 of the said act

1281a, historical note, was unconstitutional; (2) that the 1956 amendment of § 241(a) (11) of the Immigration and Naturalization Act [2] was prospective in its application; (3) that the saving clause (§ 405(a) of the Immigration and Naturalization Act of 1952) [3] gave appellant a status of nondeportability; and

and have fixed the quota for the Philippine Islands in accordance therewith to be as hereinafter set forth.

"Now, Therefore, I Harry S. Truman, President of the United States of America, acting under and by virtue of the power in me vested by the aforesaid act of Congress, do hereby proclaim and make known that the annual quota for the Philippine Islands effective July 4, 1946, for the remainder of the fiscal year ending June 30, 1947, and for each fiscal year thereafter, has been determined in accordance with the law to be, and shall be 100.

"The immigration quota of 50 authorized by section 8(a) (1) of the Act approved March 24, 1934, entitled 'An Act to provide for the complete independence of the Philippine Islands, to provide for the adoption of a constitution and a form of government for the Philippine Islands, and for other purposes' (48 Stat. 462; 53 Stat. 1230; 48 U.S.C. 1238), which Act was accepted by concurrent resolution of the Philippine Legislature on May 1, 1934, and which became effective on that date, will become inoperative on July 4, 1946, the date the Government of the United States recognizes the independence of the Philippine Islands as a separate and self-governing nation.

"The immigration quota assigned to the Philippine Islands is designed solely for purposes of compliance with the pertinent provisions of the Immigration Act of 1924 and is not to be regarded as having any significance extraneous to this subject.

"This proclamation shall have the effect of amending Proclamation 2283 of April 28, 1938, and is the third amendment to that proclamation.

"In Witness Whereof, I have hereunto set by hand and caused the seal of the United States of America to be affixed.

"Done at the city of Washington this 4th day of July, in the year of our Lord nineteen hundred and forty six and of the

[Seal] Independence of the United States of America the one hundred and seventy-first.

"Harry S Truman

"By the President:

"Dean Acheson

"Acting Secretary of State."

2. 8 U.S.C.A. § 1251(a) (11) as amended, 70 Stat. 575 (1956), reads as follows:

"(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

"(11) is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs, or who has been convicted of a violation of, or a conspiracy to violate, any law or regulation governing or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, any salt derivative or preparation of opium or coca leaves or isonipecaine or any addiction-forming or addiction-sustaining opiate;'"

3. 8 U.S.C.A. § 1101 Note, 66 Stat. 280 (1952):

"Sec. 405. (a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect the validity of any declaration of intention, petition for naturalization, certificate of naturalization, certificate of citizenship, warrant of arrest, order or warrant of deportation, order of exclusion, or other document or proceeding which shall be valid at the time this Act shall take effect; or to affect any prosecution, suit, action, or proceedings, civil or criminal, brought, or any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect; but as to all such prosecutions, suits, actions, proceedings, statutes, conditions, rights, acts, things, liabilities, obligations, or matters the statutes or parts of statutes repealed by this Act are, unless otherwise specifically provided therein, hereby continued in force and effect. When an immigrant, in possession of an unexpired immigrant visa issued prior to the effective date of this Act, makes application for admission, his admissibility shall be determined under

(4) that the Philippine Independence Act of 1934, 48 Stat. 456, was unconstitutional in changing appellant's status from a national to that of an alien.

■ The first point is without merit. The Congress saw fit to make the complete independence of the Philippine Islands contingent upon action by the President of the United States. In so providing, it was itself legislating, and the President, by his proclamations [4], 22 U.S.C.A. § 1394, historical note, pursuant

to such express authority, acted within his authority and constitutionally.

■ The second point is without merit. The statute, § 241(a) (11) as amended, 70 Stat. 575 (1956), by its terms is specifically made retroactive to one "who *at any time* has been convicted of a violation of * * * any law * * * relating to the illicit possession of * * * narcotic drugs * * *." [Emphasis added.]

the provisions of law in effect on the date of the issuance of such visa. An application for suspension of deportation under section 19 of the Immigration Act of 1917, as amended, or for adjustment of status under section 4 of the Displaced Persons Act of 1948, as amended, which is pending on the date of enactment of this Act, shall be regarded as a proceeding within the meaning of this subsection."

4. (a) 60 Stat. 1352 (1946):
"Independence of the Philippines
By The President Of
The United States Of America
A Proclamation
"Whereas the United States of America by the Treaty of Peace with Spain of December 10, 1898, commonly known as the Treaty of Paris, and by the Treaty with Spain of November 7, 1900, did acquire sovereignty over the Philippines, and by the Convention of January 2, 1930, with Great Britain did delimit the boundary between the Philippine Archipelago and the State of North Borneo; and

"Whereas the United States of America has consistently and faithfully during the past forty-eight years exercised jurisdiction and control over the Philippines and its people; and

"Whereas it has been the repeated declaration of the legislative and executive branches of the Government of the United States of America that full independence would be granted the Philippines as soon as the people of the Philippines were prepared to assume this obligation; and

"Whereas the people of the Philippines have clearly demonstrated their capacity for self-government; and

"Whereas the Act of Congress approved March 24, 1934, known as the Philippine Independence Act, directed that, on the 4th day of July immediately following a ten-year transitional period leading to the independence of the Philippines, the President of the United States

of America should by proclamation withdraw and surrender all rights of possession, supervision, jurisdiction, control, or sovereignty of the United States of America in and over the territory and people of the Philippines, except certain reservations therein or thereafter authorized to be made, and, on behalf of the United States of America, should recognize the independence of the Philippines.

"Now, Therefore, I, Harry S. Truman, President of the United States of America, acting under and by virtue of the authority vested in me by the aforesaid act of Congress, do proclaim that, in accord with and subject to the reservations provided for in the applicable statutes of the United States,

"The United States of America hereby withdraws and surrenders all rights of possession, supervision, jurisdiction, control, or sovereignty now existing and exercised by the United States of America in and over the territory and people of the Philippines; and,

"On behalf of the United States of America, I do hereby recognize the independence of the Philippines as a separate and self-governing nation and acknowledge the authority and control over the same of the government instituted by the people thereof, under the constitution now in force.

"In Witness Whereof, I have hereunto set my hand and caused the seal of the United States of America to be affixed.

"Done at the City of Washington this Fourth day of July in the year of our Lord, nineteen hundred and forty-six, and of the [Seal] Independence of the United States of America the one hundred and seventy-first.
"Harry S Truman
"By the President:
"Dean Acheson
"Acting Secretary of State."
(b) 60 Stat. 1353 (1946) (see note 1, supra).

 The third point is without merit. Rabang v. Boyd, 1957, 353 U.S. 427, 77 S.Ct. 985, 1 L.Ed.2d 956. This case was distinguished on its face from Barber v. Gonzales, 1954, 347 U.S. 637, 74 S.Ct. 822, 98 L.Ed. 1009, because entry from a foreign country is not a condition of deportability. And see, Rabang v. Boyd, 9 Cir., 1956, 234 F.2d 904.

The fourth point is without merit. It has been previously decided adversely to appellant. Cabebe v. Acheson, 9 Cir., 1950, 183 F.2d 795; Rabang v. Boyd, 1957, 353 U.S. 427, 77 S.Ct. 985, 1 L.Ed.2d 956.

The judgment is affirmed.