**Gregorio Arciaga MESINA, Appellant,**

v.

**George K. ROSENBERG, District Director of Immigration and Naturalization, Appellee.**

**No. 16448.**

United States Court of Appeals
Ninth Circuit.

April 4, 1960.

Rehearing Denied June 1, 1960.

292

Norman Stiller, George Olshausen, San Francisco, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Richard A. Lavine, Arline Martin, Frederick M. Brosio, Jr., Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before CHAMBERS and HAMLIN, Circuit Judges, and JAMESON, District Judge.

JAMESON, District Judge.

This is an appeal from a judgment denying declaratory and injunctive re-

lief under 28 U.S.C.A. § 2201 and 5 U.S.C.A. § 1009. Appellant, Gregorio Arciaga Mesina, sought (1) a declaratory judgment vacating and declaring void a deportation order executed in 1936 and declaring that appellant is a permanent resident of the United States; and (2) an injunction against enforcement of a deportation order entered in 1958 and now outstanding against appellant.

Appellant was born in the Philippines in 1903 and at birth was a national of the United States. He first came to the United States in 1924 and lived continuously in continental United States or Puerto Rico from 1924 until 1936.

On June 25, 1935 a warrant of arrest was issued charging that appellant was deportable in that he was "found managing a house of prostitution, music hall, or other place of amusement where prostitutes gather." In February, 1936, the Board of Immigration Appeals upheld appellant's deportability. On February 27, 1936, a warrant of deportation was issued, charging that he was deportable under the Act of 1917, in that he "had been found managing a house of prostitution, and had been found receiving, sharing in, or deriving benefits from the earnings of a prostitute." [1] Appellant was deported to the Philippines on April 18, 1936.

On December 31, 1956, appellant entered the United States as a crewman. His original "Crewman's Landing Permit" required his departure from the United States on or before January 30, 1957. This was extended to February 27, 1957.

Appellant was not in the United States at any time between his deportation in 1936 and sometime in 1946, when he entered as a seaman. Thereafter he made several trips to the United States as a seaman before his arrival in 1956. Prior to his 1956 entry he made no effort to remain in the United States, made no attempt to obtain the consent of the Attorney General to his applying for admission pursuant to Section 212(a) (17) of the Immigration and Nationality Act of June 27, 1952 (8 U.S.C.A. § 1182(a) (17)),[2] and did not otherwise seek admission.

On June 11, 1957, appellant was served with an order to show cause why he should not be deported as a non-immigrant who had remained in the United States longer than permitted. On June 28, 1957, after a hearing,[3] a special inquiry officer of the Immigration and Naturalization Service determined that appellant was deportable under Section 241(a) (2) of the 1952 Act (8 U.S.C.A. § 1251(a) (2)).[4]

1. § 19 of the Immigration Act of 1917, 39 Stat. 889, as amended, read in pertinent part: " * * * any alien * * * who shall receive, share in, or derive benefit from any part of the earnings of any prostitute; any alien who manages or is employed by, in, or in connection with any house of prostitution or music or dance hall or other place of amusement or resort habitually frequented by prostitutes, or where prostitutes gather * * * shall, upon warrant of the Attorney General, be taken into custody and deported * * *." 8 U.S.C. § 155, 1946 ed.

2. § 212(a) (17) of the Immigration and Nationality Act of 1952, 66 Stat. 182, 8 U.S.C.A. § 1182(a) (17) provides:
"(a) Except as otherwise provided in this chapter, the following classes of aliens shall be ineligible to receive visas and shall be excluded from admission into the United States:
* * * * *

"(17) Aliens who have been arrested and deported, or who have fallen into distress and have been removed pursuant to this chapter or any prior act, * * * unless prior to their embarkation or reembarkation at a place outside the United State or their attempt to be admitted from foreign contiguous territory the Attorney General has consented to their applying or reapplying for admission;"

3. At the hearing, appellant submitted an Application for Advance Permission to Return to Unrelinquished Domicile (pursuant to § 212(c) of the 1952 Act, 8 U.S.C.A. § 1182(c)), and an Application for Permission to Reapply for Admission After Deportation.

4. § 241(a) of the 1952 Act, 66 Stat. 204, 8 U.S.C.A. § 1251(a), insofar as pertinent, provides:
"(a) Any alien in the United States (including an alien crewman) shall, upon

The order to show cause did not contain any charge of deportability under Section 242(f) of the 1952 Act (8 U.S. C.A. § 1252(f)), entitled "Unlawful reentry." [5]

On December 12, 1957, the Board of Immigration Appeals ordered a reopened hearing in order to include the record of the 1935 deportation hearing. On February 17, 1958 the special inquiry officer again found the appellant deportable under the charge in the order to show cause. A deportation order was issued, and this order was confirmed by the Board of Immigration Appeals on August 7, 1958. On October 13, 1958, appellant was granted nine days within which to effect a voluntary departure. On October 16, 1958, this action was instituted.

█ When appellant landed in the United States on December 31, 1956, he was a nonimmigrant alien crewman under § 101(a) (15) (D) of the 1952 Act (8 U.S.C.A. § 1101(a) (15) (D)).[6] He was admitted as an alien crewman under § 252 of the 1952 Act (8 U.S.C.A. § 1282).[7] The present deportation order is

---

the order of the Attorney General, be deported who—

\* \* \* \* \*

"(2) entered the United States without inspection or at any time or place other than as designated by the Attorney General or is in the United States in violation of this chapter or in violation of any other law of the United States;

\* \* \* \* \*

"(9) was admitted as a nonimmigrant and failed to maintain the nonimmigrant status in which he was admitted or to which it was changed pursuant to section 1258 of this title, or to comply with the conditions of any such status:

\* \* \* \* \*

"(12) by reason of any conduct, behavior or activity at any time after entry became a member of any of the classes specified in paragraph (12) of section 1182(a) of this title; or is or at any time after entry has been the manager, or is or at any time after entry has been connected with the management of a house of prostitution or any other immoral place;"

5. § 242 of the 1952 Act, 66 Stat. 208, 8 U.S.C.A. § 1252, insofar as pertinent, provides:

"(e) Any alien against whom a final order of deportation is outstanding by reason of being a member of any of the classes described in paragraphs \* \* \* (12), \* \* \* of section 1251(a) of this title \* \* \*. (Section 1251(a) (12) is set out in footnote 4, supra).

"(f) Should the Attorney General find that any alien has unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation, whether before or after June 27, 1952, on any ground described in any of the paragraphs enumerated in subsection (e) of this section, the previous order of deportation shall be

deemed to be reinstated from its original date and such alien shall be deported under such previous order at any time subsequent to such reentry. For the purposes of subsection (e) of this section the date on which the finding is made that such reinstatement is appropriate shall be deemed the date of the final order of deportation."

6. § 101 of the 1952 Act, 66 Stat. 166, 8 U.S.C.A. § 1101, provides in part:

"(a) as used in this chapter—

\* \* \* \* \*

"(15) The term 'immigrant' means every alien except an alien who is within one of the following classes of nonimmigrant aliens—

\* \* \* \* \*

"(D) an alien crewman serving in good faith as such in any capacity required for normal operation and service on board a vessel (other than a fishing vessel having its home port or an operating base in the United States) or aircraft, who intends to land temporarily and solely in pursuit of his calling as a crewman and to depart from the United States with the vessel or aircraft on which he arrived or some other vessel or aircraft;"

7. § 252 of the 1952 Act, 66 Stat. 220, 8 U.S.C.A. § 1282, insofar as pertinent, provides:

"(a) No alien crewman shall be permitted to land temporarily in the United States except as provided in this section and sections 1182(d) (3), (5) and 1283 of this title. If an immigration officer finds upon examination that an alien crewman is a nonimmigrant under paragraph (15) (d) of section 1101(a) of this title and is otherwise admissible and has agreed to accept such permit, he may, in his discretion, grant the crewman a conditional permit to land temporarily pursuant to regulations prescribed by the Attorney General, subject to revocation in subse-

based on Section 241 (a) (2) of the 1952 Act (8 U.S.C.A. § 1251(a) (2)) and charges appellant as an alien crewman who was admitted as a nonimmigrant and failed to comply with the conditions of this status by overstaying his leave. It is well settled that an alien crewman who overstays his permitted time in the United States or fails to comply with the conditions of his crewman's landing permit is subject to deportation.[8]

It is appellant's first contention that the "only appropriate charge" is under Section 242(f) (8 U.S.C.A. § 1252(f)),[9] charging unlawful reentry after a previous lawful deportation, with a reinstatement of the previous order of deportation. Appellant argues that the reinstatement of the 1936 deportation order was mandatory and, in effect, that appellee must rely upon the 1935–36 proceedings to sustain the present deportation order.

This court held adversely to appellant's contention in De Souza v. Barber, 9 Cir., 1959, 263 F.2d 470, 474, certiorari denied 359 U.S. 989, 79 S.Ct. 1118, 3 L. Ed.2d 978. In that case an alien deported from the United States in 1930, who reentered in 1957 without a visa, sought through habeas corpus proceedings to attack the 1930 order of deportation. While the previous order of deportation had been reinstated pursuant to Section 242(f) (8 U.S.C.A. § 1252

(f)), it was held that De Souza "was a deportable alien within the meaning of 8 U.S.C.A. § 1251(a) (1) by reason of his lack of a visa or other document permitting entry", and that this was "the basic and substantive ground of deportation."[10] The fact that the Attorney General in the instant case did not proceed under § 242(f) (8 U.S.C.A. § 1252(f)) is immaterial, if appellant were properly deportable under § 241(a) (2) (8 U.S.C.A. § 1251(a) (2)),[11] which is the substantive section under which the 1957 deportation proceedings were instituted.

Appellant contends however, that the 1935 order of deportation was void, that appellant "never legally interrupted his United States residence", that his arrival in 1956 was a continuation of his previous legal residence and not an "entry", and that accordingly he was never subject to the limitations of § 241(a) (2) of the 1952 Act. Counsel argue that De Souza v. Barber is distinguishable by reason of the fact that De Souza was an alien at the time of his original deportation, whereas Mesina was an American national and not an alien.

■■ It is admitted that appellant was an American national when he was deported in 1936, but that did not in itself render the order of deportation void; and appellant clearly was an alien when he entered in 1956.[12] With re-

---

quent proceedings as provided in subsection (b) of this section, and for a period of time, in any event, not to exceed—

&ast; &ast; &ast; &ast; &ast;

"(2) twenty-nine days, if the immigration officer is satisfied that the crewman intends to depart, within the period for which he is permitted to land, on a vessel or aircraft other than the one on which he arrived."

8. §§ 241(a) and 252, 1952 Act, 8 U.S.C.A. §§ 1251(a) and 1282 (notes 4 and 7 supra); Philippides v. Day, 1931, 283 U.S. 48, 51 S.Ct. 358, 75 L.Ed. 833; Foundoulis v. Lehmann, 6 Cir., 1958, 255 F.2d 104; Delany v. Moraitis, 4 Cir., 1943, 136 F.2d 129; United States ex rel. Rios v. Day, 2 Cir., 1928, 24 F.2d 654, certiorari denied 277 U.S. 604, 48 S.Ct. 601, 72 L.Ed. 1011.

9. See note 5 supra.

10. See also United States ex rel. Blankenstein v. Shaughnessy, D.C.S.D.N.Y., 112 F.Supp. 607, 610, 611, where Judge Weinfeld held that § 242(f) is not a substantive provision, but rather "an enforcement one which comes into play only subsequent to a finding of deportabilty", and that "the ground of deportability of an alien who illegally reentered after a prior final order of deportation is predicated not upon § 242(f) (8 U.S.C.A. § 1252(f)), but upon § 241(a) (1) (8 U.S.C.A. § 1251(a) (1)) of the Act."

11. See note 4 supra.

12. Upon the proclamation of Philippine independence on July 4, 1946, all Filipinos lost their status as nationals and became aliens, regardless of whether they resided

spect to the power to exclude Filipinos between 1934 and 1946, the Supreme Court in Rabang v. Boyd, 1957, 353 U.S. 427, 433, 77 S.Ct. 985, 988, 1 L.Ed.2d 956, said in part: "Congress not only had, but exercised, the power to exclude Filipinos in the provision of § 8(a) (1) of the Independence Act, which, for the period from 1934 to 1946, provided: 'For the purposes of the Immigration Act of 1917 * * * and all other laws of the United States relating to the immigration, exclusion, or expulsion of aliens, citizens of the Philippine Islands who are not citizens of the United States shall be considered as if they were aliens.'" As this court said in Gonzales v. Barber, 9 Cir., 1953, 207 F.2d 398, 401: "* * * The Immigration Act of 1917 was one of the statutes specifically envisioned by Congress in providing that for its purposes Filipinos 'shall be considered as if they were aliens'." [13]

Appellant argues that Section 8(a) (1) of the Philippine Independence Act is inapplicable because the Act did not become effective until May 14, 1935, and the evidence adduced at the 1935 deportation hearing related to acts committed prior to that date. We find no merit in this contention. It is specifically provided that Section 8(a) shall be "effec-

tive upon the acceptance of this Act by concurrent resolution of the Philippine Legislature or by a convention called for that purpose, as provided in section 17." [14] On May 1, 1934, the Philippine Legislature adopted a concurrent resolution providing that the Philippine Independence Act, "commonly known as the Tydings-McDuffie Law be, and is hereby, accepted by the Philippine Legislature in accordance with the provisions of section seventeen thereof."

Subsequently a second ordinance for the acceptance of the Philippine Independence Act, together with a constitution, were submitted to a constitutional convention. The constitution, to which was appended the ordinance accepting the Act, was adopted by the convention on February 8, 1935, approved by the President of the United States on March 23, 1935, and ratified by the Filipino people on May 14, 1935.

■ While there is some conflict in the authorities with respect to the effective date of the Philippine Independence Act, we adhere to the holding of this court in Cabebe v. Acheson, 9 Cir., 1950, 183 F.2d 795, 799, that the effective date with respect to the application of Section 8(a) (1) is May 1, 1934. [15] This is consistent with the reference in Rabang

in the United States or in the Philippine Islands. See Rabang v. Boyd, 1957, 353 U.S. 427, 77 S.Ct. 985, 1 L.Ed.2d 956; Mangaoang v. Boyd, 9 Cir., 1953, 205 F.2d 553, certiorari denied 346 U.S. 876, 74 S.Ct. 129, 98 L.Ed. 384; United States ex rel. Alcantra v. Boyd, 9 Cir., 1955, 222 F.2d 445.

13. Gonzales v. Barber involved acts "committed within five years *after the entry* of the alien into the United States." The court held that a Filipino who came into the United States prior to the Philippine Independence Act had not technically "entered" the United States and hence the convictions in question would not subject him to deportation. The Supreme Court affirmed. Barber v. Gonzales, 1954, 347 U.S. 637, 74 S.Ct. 822, 98 L.Ed. 1009.

Unlike the present statute, Section 241 (a) (12) of the 1952 Act (8 U.S.C.A. § 1251(a) (12)), set forth in footnote 4, supra, the acts for which appellant was deported in 1935–6 did not contain the

provision that they be committed "after entry" (see note 1, supra), and the holding in Gonzales v. Barber, with respect to "entry" accordingly is not applicable. See Rabang v. Boyd, supra, note 12.

14. Section 17 reads: "The foregoing provisions of this Act shall not take effect until accepted by concurrent resolution of the Philippine Legislature or by a convention called for the purpose of passing upon that question as may be provided by the Philippine Legislature." See Act of March 24, 1934, 48 Stat. 465.

15. This court in Del Guercio v. Gabot, 9 Cir., 1947, 161 F.2d 559, 560, stated that "Formal acceptance (of the Philippine Independence Act) became effective May 14, 1935"; and it was recited in Mangaoang v. Boyd, 9 Cir., 1953, 205 F.2d 553, that the Philippine Independence Act became effective May 14, 1935, citing Del Guercio v. Gabot. In neither case was a determination of the effective date necessary to the decision.

v. Boyd, supra, to the power to exclude Filipinos under Section 8(a) (1) "for the period from 1934 to 1946." And in the Presidential Proclamation adopted July 4, 1946, relating to immigration quota for the Philippine Islands, it is recited that the Act "was accepted by concurrent resolution of the Philippine Legislature on May 1, 1934" and "became effective on that date." [16]

 At the time of the deportation proceedings in 1935–36, appellant was a citizen of the Philippine Islands and not a citizen of the United States. Pursuant to Section 8(a) (1) of the Philippine Independence Act, supra, appellant, subsequent to May 1, 1934, was subject to being considered as an alien for the purposes of the Immigration Act of 1917 and subject to deportation under its terms.[17]

It is unnecessary to consider alleged infirmities in the proceedings resulting in the 1935 deportation order. For more than 20 years appellant did not seek any review of the order of deportation or question its validity. He did not seek lawful entry under the provisions of 8 U.S.C.A. §§ 1181, 1182 or 1226. Although appellant landed in the United States on numerous occasions subsequent to 1946, he made no attempt to remain or to attack the prior deportation order until 1956. After this long period of acquiescence the 1935–36 deportation proceedings are not open to collateral attack.[18]

It is our conclusion (1) that appellant was an alien crewman when he entered the United States on December 31, 1956 and overstayed his leave, and that the order of deportation accordingly was properly entered under Section 241(a) (2) of the Act of 1952 (8 U.S.C.A. § 1251 (a) (2)); (2) that the Attorney General was not required to institute proceedings under Section 242(f) of the 1952 Act (8

U.S.C.A. § 1252(f)) for reinstatement of the 1936 order of deportation; and (3) that appellant's contention that his residence in the United States was uninterrupted and that he made no "entry" in 1956 is without merit.

Finding no error, the judgment is affirmed.

---

16. Presidential Proclamation No. 2696, 11 F.R. 7517, 60 Stat. 1353, 22 U.S.C.A. § 1281 note. See also informal interpretation of Philippine Independence Act by the Attorney General of the United States, Opinions of the Attorney General, 1933, Vol. 37, page 115.

17. See note 1, supra.

18. De Souza v. Barber, 9 Cir., 1959, 263 F.2d 470, 474.