**Vito PALMA, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION SERVICE, Respondent.**

**Vito PALMA, Plaintiff-Appellant,**

v.

**Thomas M. PEDERSON, District Director, Immigration & Naturalization Service, Defendant-Appellee.**

**Nos. 15070, 15231.**

United States Court of Appeals
Sixth Circuit.

June 15, 1963.

Phillip Bartell, Cleveland, Ohio, for appellant.

Dominic J. Cimino, Asst. U. S. Atty., Cleveland, Ohio, Merle M. McCurdy, U. S. Atty., Cleveland, Ohio, Don R. Bennett, Attorney, Department of Justice, Washington, D. C., on brief, for appellee.

Before MILLER and O'SULLIVAN, Circuit Judges, and TAYLOR, District Judge.

ROBERT L. TAYLOR, District Judge.

Case No. 15,070 involves a petition to review an order of the Board of Immigration Appeals dated July 23, 1962 in which the Board dismissed an appeal of petitioner Vito Palma from a decision of Special Inquiry Officer Richard P. Lott, ordering him deported under a previous order of deportation.

Case No. 15,231 is an appeal from the ruling of the District Judge denying petitioner's application for a writ of habeas corpus.

The Board of Appeals found that petitioner, a 49-year old native and national of Italy, who left a wife and seven children in Italy who were also nationals of Italy, last entered the United States on July 10, 1955. That he was arrested and deported from the United States on October 16, 1937 on the ground that he had been convicted of two separate offenses

involving crimes of moral turpitude committed subsequent to his entry into the United States as an infant in 1915; that the first offense involved violation of the National Motor Vehicle Theft Act in 1929, and the second, the crime of burglary, larceny and concealing and receiving stolen goods in 1933; that for the first offense he received a sentence of two years and for the second a sentence for an indeterminate period.

The Board observed that the sole issue before it was whether the prior 1937 deportation was subject to collateral attack in the proceeding before it and held that it was not.

The District Judge ordered petitioner retained without bail pending final determination of his deportability, but upon application this Court granted bail.

Petitioner has also filed a motion to remand both cases to the Immigration and Naturalization Service for the taking of testimony with respect to the deportation hearing of July 23, 1937; and with respect to the habeas corpus application, a motion to remand the case to the District Court also for the taking of testimony with respect to numerous items pertaining to the 1937 deportation hearing.

Petitioner contends that the 1937 order is void because the hearing from which the order resulted was held in the Hamilton County Jail on July 23, 1937 and was conducted in a manner to deny him a fair hearing; that he was not given notice of such hearing as required by the Regulations of the Immigration Service and that he was not informed of any plan to hold such hearing until the Immigration Inspector told him to be sworn for a hearing on deportation charges; that he did not intelligently understand the proceedings and was not given the right to have a friend or relative present and did not intelligently waive counsel; that the Immigration Inspector did not make a verbatim transcript of such hearing, but merely summarized parts of the proceedings; that the hearing was contrary to regulations in effect at that time in that the Immigration Inspector did not give petitioner a copy of the warrant with the charges therein; that the hearing was contrary to regulations which required that the Inspector submit the findings of fact and conclusions of law to the petitioner for approval or objection; that the hearing was void because the Inspector did not prepare findings of fact or conclusions of law in accordance with the regulations before recommending deportation; that the petitioner was deprived of a fair trial because he was not permitted assistance of counsel. That the hearing did not meet the requirements of due process.

The Government contends that an executed deportation is not subject to collateral attack except where the record shows a gross miscarriage of justice and that the record of the 1937 hearing does not show a miscarriage of justice.

The Government contends further, assuming arguendo that the 1937 deportation was subject to collateral attack in that petitioner was not given sufficient notice of the hearing and did not effectively waive counsel, the regulations on which the petitioner relies to establish his claim of denial of due process were not in effect during the period of the 1937 deportation proceedings; that there was substantial compliance with the rules and regulations prevailing at the time of the proceedings; that if there was any procedural error, it was waived by petitioner, then a 24-year old adult who had knowledge gained from experience in court of the benefits of representation by counsel; and that he waived the right to such representation. That he raised no objection to proceeding forthwith with the deportation hearing; and that he had six months between the time the deportation proceedings were instituted and the time he was actually deported in which to obtain counsel.

The Government contends further that if it is assumed arguendo that there were irregularities in the 1937 proceedings, a conviction and sentence to imprisonment for a term of one year or more under the Dyer Act is for a crime involving moral turpitude and the errors, if any, were harmless to petitioner.

Petitioner first entered the United States in October 1915 when he was about 2½ years old. Fourteen years later, on September 13, 1929, he was indicted by a grand jury in the Southern District of Indiana for transporting a stolen automobile and knowing that it was stolen in violation of 18 U.S.C. Sec. 2312. He entered a plea of guilty, through his attorney, and was imprisoned in the United States Industrial Reformatory at Chillicothe for a term of two years.

A second indictment was returned against petitioner on June 8, 1933 in which he was charged with burglary, larceny and receiving and concealing stolen goods. On June 15, 1933, following a plea of guilty, the Hamilton County Court of Common Pleas sentenced him to imprisonment for an indeterminate period. He escaped from the reformatory on September 25, 1933 and was at large until June 29, 1935 when he was returned from the State of Wisconsin to the reformatory. On September 28, 1936 he was removed to the Ohio State Penitentiary to complete his sentence.

He was interviewed at the Ohio State Penitentiary by Immigration Officer Roger L. Conant on April 22, 1937 regarding his right to remain in the United States. At that time he was 24 years of age and he admitted to the foregoing convictions and that he was a native of Italy.

The deportation warrant of arrest was issued on July 14, 1937 by the Assistant to the Secretary of Labor charging that he had been "sentenced, subsequent to May 1, 1917, to imprisonment more than once for a term of one year or more for the commission * * * of a crime involving moral turpitude, to wit: Violation of the National Motor Vehicle Theft Act; and Burglary, Larceny, and Receiving and Concealing Stolen Goods." A deportation hearing was ordered.

On July 23, 1937 at around 3:10 p. m., he was taken into custody by Immigration Inspector P. B. McHugh and placed in the Hamilton County Jail in default of bond. A deportation hearing was conducted on the same day by Inspector McHugh, at which time he made the follow-ing answers to questions of the Inspector:

"Q. * * * Do you desire to obtain the services of a lawyer? A. No.

"Q. You are further advised that you are privileged to have present at this time a representative of any well known welfare organization. Do you desire to have such a person present? A. No. I believe it would be just a bother.

"Q. Do you then waive your right to be represented by an attorney or other representative, and are you ready and willing to proceed with the hearing in your case at this time? A. Yes, I am ready.

"Q. I again show you this Warrant of Arrest dated at Washington, D. C., July 14, 1937, and ask you if you believe that this Warrant refers to you? A. (After Warrant of Arrest has been read and explained by examining officer) Yes, it refers to me, all except that last name Palina stated therein. Copy of above-mentioned Warrant of Arrest is here introduced into the present record of hearing, and made a part thereof, as Exhibit 'A.'

"Q. I now show you a copy of a sworn statement made by you at the Ohio Penitentiary, Columbus, Ohio, on April 22, 1937, before Immigrant Inspector Roger L. Conant, which I will ask you to read, and after reading, state whether or not all the information contained therein is true and correct. A. (Statement read by alien) Yes, the statement is true. I introduce copy of the above-mentioned sworn statement into the record of this hearing, making it a part thereof, marked Exhibit 'B.'

"Q. I now show you a certified copy of an indictment and of a committment showing sentence to the United States Industrial Reformatory at Chillicothe in the State of Ohio, on September 21, 1929, on a charge of transporting a stolen mo-

tor vehicle from the City of Cincinnati Ohio to Indianapolis, Indiana. I ask you if you believe such indictment and commitment refer to yourself. (Indictment and Sentence read by alien) A. Yes, they refer to me.

"I introduce copy of the indictment and committment into this record of hearing, making it a part hereof, marked Exhibit 'C.'

"Q. I now show you a certified copy each of the indictment and sentence, showing sentence in Hamilton County, Ohio on June 15, 1933, of one Victor Palma, to the Ohio State Reformatory, Mansfield, Ohio, for an indeterminate period. I ask you if you believe that this indictment and sentence refer to yourself. (Indictment and Sentence read by alien) A. Yes, it refers to me.

"I introduce copy of the above-mentioned Indictment and Sentence into this record of hearing, making it a part hereof, marked Exhibit 'D'."

The Board recommended that petitioner be deported on the charges in the deportation warrant of arrest on August 31, 1937. On September 21, 1937 the Assistant to the Secretary of Labor ordered his deportation on the grounds set forth in the warrant of arrest; and on October 16, 1937 he was deported from the United States to Italy.

Petitioner did not receive permission from the Attorney General to apply for subsequent admission to the United States. He admits re-entry into the United States in 1939 as a stowaway and his return to Italy six months thereafter.

On July 10, 1955, he jumped ship at Philadelphia, Pennsylvania and made his way to Ohio where he remained until his apprehension on May 3, 1962 by the Immigration and Naturalization Service. He filed no reports with the Service after his illegal re-entry in 1955.

Special Inquiry Officer Richard P. Lott found petitioner to be an alien who was previously deported as a member of a class now described in Section 241(a) (4) of the Immigration and Nationality Act of 1952 (8 U.S.C. § 1251(a) (4))[1] on June 28, 1962; and ordered his expulsion under the 1937 deportation order in accordance with Section 242(f) of the Immigration and Nationality Act of 1952 (8 U.S. C. § 1252(f)).[2]

Petitioner's appeal to the Board of Immigration Appeals was dismissed on July 23, 1962. The instant petition for judicial review of the 1962 deportation order was filed in this Court in accordance with Section 106 of the Immigration and Nationality Act of 1952 (8 U.S.C. § 1105a).[3]

1. "(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

\* \* \* \* \*

"(4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial."

2. "(f) Should the Attorney General find that any alien has unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation, whether before or after June 27, 1952, on any ground described in any of the paragraphs enumerated in subsection (e) of this section, the previous order of deportation shall be deemed to be reinstated from its original date and such alien shall be deported under such previous order at any time subsequent to such reentry. For the purposes of subsection (e) of this section the date on which the finding is made that such reinstatement is appropriate shall be deemed the date of the final order of deportation."

3. "(a) The procedure prescribed by, and all the provisions of sections 1031–1042 of Title 5, shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States pursuant to administrative proceedings under section 1252(b) of this title or

The District Judge found that the deportation order of September 21, 1937 was not subject to collateral attack and that there was no miscarriage of justice in the deportation hearing; that if it be conceded that the 1937 proceeding should be re-examined the petitioner would not be in any better position because the 1937 order was valid when entered and remains valid and is supported by the record of the proceeding.

The District Judge further found that petitioner was deported to Italy in 1937 and his re-entry in the United States in 1955 was unlawful.

Petitioner contends that he should not have been deported on the basis of the 1937 deportation order because he was not accorded due process during the course of events which brought about that order. He contends that if he had been accorded due process he would have obtained counsel at the 1937 deportation proceedings; that if he had obtained counsel it would have been established that his conviction in 1929 under the Dyer Act was not a crime involving moral turpitude. Hence, he would not have been deportable under Section 19 of the Immigration Act of February 5, 1917 (39 Stat. 874), as amended.[4]

 The record of the 1937 hearing does not show a gross miscarriage of justice and twenty-five years is too long to wait to complain of procedural infirmities.

It was held in Mesina v. Rosenberg, 278 F.2d 291 (C.A. 9), that twenty years was too long to wait to complain of procedural infirmities in a deportation proceeding. The following is pertinent language used by the Court:

"It is unnecessary to consider alleged infirmities in the proceedings resulting in the 1935 (sic) deportation order. For more than 20 years appellant did not seek any review of the order of deportation or question its validity. He did not seek lawful entry under the provisions of 8 U.S. C.A. §§ 1181, 1182 or 1226. Although appellant landed in the United States on numerous occasions subsequent to 1946, he made no attempt to remain or to attack the prior deportation order until 1956. After this long period of acquiescence the 1935-36 deportation proceedings are not open to collateral attack."

In the case of DeSouza v. Barber, 263 F.2d 470 (C.A. 9), an executed deportation order entered in 1930 was under attack, and the Court held that it was not subject to collateral attack:

"Appellant's entire case is based upon alleged infirmities in the deportation order in 1930. As the trial judge well said, 'The petitioner would have this court disinter his first deportation order which was issued in 1930 and examine the evi-

comparable provisions of any prior Act, except that—

"*Time for filing petition*

"(1) a petition for review may be filed not later than six months from the date of the final deportation order or from the effective date of this section, whichever is the later.

"*Venue*

"(2) the venue of any petition for review under this section shall be in the judicial circuit in which the administrative proceedings before a special inquiry officer were conducted in whole or in part, or in the judicial circuit wherein is the residence, as defined in this chapter, of the petitioner, but not in more than one circuit.

"*Respondent; service of petition; stay of deportation*

"(3) the action shall be brought against the Immigration and Naturalization Service, as respondent. * * *"

4. The pertinent part of Section 19, which appears to have been in existence in July, 1937, reads:

"[A]ny alien * * * who is hereafter sentenced more than once (to imprisonment for a term of one year or more) because of conviction in this country of any crime involving moral turpitude, committed at any time after entry * * * shall upon the warrant of the Secretary of Labor be taken into custody and deported."

dence on which it was based.' Yet for a period of more than 26 years, between his deportation in 1930 and entry in 1957, appellant did not seek any review of the order of deportation or question its validity. He did not seek permission for entry from the Attorney General under either sections 1182(a) (17) or 1181(b). He did not seek lawful entry under sections 1182 or 1226. Under these circumstances the order of deportation of 1930 is not subject to collateral attack in this proceeding."

In Daskaloff v. Zurbrick, 103 F.2d 579 (C.A. 6), this Court held that an alien could not in a subsequent habeas corpus proceeding attack the validity of a prior executed deportation order.

In Steffner v. Carmichael, 183 F.2d 19 (C.A. 5), a deportation order was entered in 1936 and the alien took no steps to test its validity and was deported. The alien re-entered the United States and was again ordered deported. The Court, in holding that the order was not subject to collateral attack unless there was a gross miscarriage of justice, stated in part:

"* * * There are numerous cases where aliens have been deported several times, and if in each subsequent case the validity of the previous deportation order had to be determined, there would be no end to the proceedings cast upon administrative agencies."

In the instant case, petitioner was deported some twenty-five years ago. He did not, at that time, contest the validity of the order. He illegally re-entered the United States in 1955 and managed to evade the immigration authorities for seven years. He violated the criminal statute requiring him to register as an alien and to submit annual address reports. (8 U.S.C. § 1306) Neither before his illegal re-entry nor subsequently did he try to obtain a legal status in this country. He married a national of Italy and became the father of seven children there, thus identifying himself with that country. This family, however, was left in Italy when Palma made his last illegal entry. They remain there.

In Giaimo v. Pederson, 289 F.2d 483 (C.A. 6), this Court sustained a finding of the District Judge "that appellant's waiver of his right to counsel at the hearing on December 17, 1958, was clearly demonstrated." The District Judge had held that the order of deportation would work a severe hardship on the alien but the law did not permit him to stay the deportation. In the District Court, Giaimo v. Pederson, D.C., 193 F.Supp. 527, the alien admitted at the hearing the two convictions. In the course of the opinion, the District Judge said at page 529:

"A court is not required to grant an injunction when there has been a possible denial of due process in a deportation hearing when no prejudice has resulted from the denial. As was said in Sumio Madokoro v. Del Guerico, 9 Cir., 160 F.2d 164, certiorari denied 332 U.S. 764, 68 S. Ct. 68, 92 L.Ed. 349:

"'Any failure to provide alien with counsel at [a] hearing before immigration inspectors is not prejudicial, where the facts brought out at the hearing are admitted to be true, and any presumption that [a] denial of due process is prejudicial is overcome by [the] alien's [own] admissions.'"

■■ Petitioner was not an immature youth when he waived the right to be represented by counsel in his 1937 hearing. At that time he was 24 years of age and had had experience in court on at least two occasions. It is fair to assume under these circumstances that he acquired some knowledge of the benefits of counsel. We conclude that his waiver of counsel was free from coercion and that he understood the meaning of such waiver. While we are of the opinion that a violation of the Dyer Act involves moral turpitude (we find no decisions squarely on point), we do not think this question is controlling. The 1937 order of deportation is not now subject to collateral attack.

**652**

The petition to review must be denied, the judgment of the District Court on the denial of a writ of habeas corpus is affirmed and the motion to remand denied.

In view of our conclusion that the 1937 order is not subject to collateral attack, it is not necessary to consider or decide the other questions made in the petition to review.