37 F.3d 1506
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Merlita Pascua SUMMERFIELD, Petitioner,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 91-70424.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1992.
Decided Sept. 19, 1994.
 
 Before: TANG, PREGERSON, and ALARCON, Circuit Judges.
 
 MEMORANDUM
 
 1
 Merlita Pascua Summerfield petitions for review of a Board of Immigration Appeals decision upholding an order of deportation issued by an immigration judge. Summerfield contends that she is not subject to deportation because she is a United States citizen or national by virtue of her birth in the Philippines during the time that country was a United States territory. We deny the petition.
 
 I.
 
 2
 Summerfield, who was born in the Philippines in 1938, was a United States national at birth. See Philippine Government Act, ch. 1369, 32 Stat. 691, 692 (1902) (deeming certain inhabitants of the Philippine Islands citizens of the Philippines and extending the protection of the United States); Rabang v. Boyd, 353 U.S. 427, 429 (1957). However, under the Philippine Independence Act of 1934, ch. 84, 48 Stat. 456 (1934), which provided for the adoption of a constitution and the withdrawal of the United States ten years afterward, citizens of the Philippine Islands lost their status as United States nationals and were considered "aliens" under the immigration laws as of July 4, 1946. Summerfield raises a number of constitutional challenges to the Philippine Independence Act and its application to her.
 
 II.
 
 3
 Summerfield first contends that because there is no constitutional provision for "national" status, she became a United States citizen at birth. While Summerfield did not specifically argue that she was a citizen under the Citizenship Clause of the Fourteenth Amendment,[1] we hold in Rabang v. INS, --- F.3d ---- (9th Cir.1994), that persons born in the Philippine Islands during the territorial period were not born "in the United States" under the Fourteenth Amendment.
 
 III.
 
 4
 Second, Summerfield challenges Congress' power to divest Philippine-born individuals of their United States nationality. However, it is well-settled that Congress is empowered "to exclude aliens altogether from the United States, or to prescribe the terms and conditions upon which they may come to this country." Kleindienst v. Mandel, 408 U.S. 753, 766 (1972) (quotation omitted). The creation of "national" status and the subsequent designation of Philippine citizens as "aliens" under the immigration laws is within Congress' power to legislate regarding the territories, see U.S. Const. art. IV, Sec. 3 (giving Congress the power "to dispose of and make all needful rules and regulations respecting the territory ... belonging to the United States"), and within the "plenary congressional power to make policies and rules for the exclusion of aliens." Kleindienst, 408 U.S. at 769. See also, Rabang, 353 U.S. at 432-33 ("Congress not only had, but exercised, the power to exclude Filipinos in the provision of Sec. 8(a)(1) of the Independence Act ...").
 
 IV.
 
 5
 Summerfield next contends that she was divested of her United States nationality without procedural due process. She claims that she was entitled to an "order to show cause" specifying the grounds for the revocation of her United States nationality and proof that she had consented to that revocation (e.g. through voting to renounce her American nationality or enlisting in a foreign army against the United States in war). However, we have previously held that national status can be taken away by Congress without consent. See Manguerra v. INS, 390 F.2d 358, 360 (9th Cir.1968). Individual notice of loss of national status was not required: "The status of United States nationality for Filipinos was the direct result of the United States' assumption of sovereignty over the Islands. When the United States relinquished its sovereignty, there remained no basis for such status." Cabebe v. Acheson, 183 F.2d 795, 801 (9th Cir.1950). See also INS v. Pangilinan, 486 U.S. 875, 885 (1988) (Filipino nationals who served with the United States Armed Forces during World War II were not entitled as a matter of due process to individualized notice of statutory rights for naturalization).[2]
 
 V.
 
 6
 Finally, Summerfield argues that Sec. 14 of the Philippine Independence Act of 1934 constituted an impermissible bill of attainder. However, "[t]he prohibition against ... bills of attainder does not apply to deportation statutes." Artukovic v. INS, 693 F.2d 894, 897 (9th Cir.1982) (citation omitted). By analogy, neither does it apply to Sec. 14, which declared that Philippine citizens are "aliens" under the immigration laws.
 
 
 7
 PETITION FOR REVIEW DENIED.
 
 PREGERSON, Circuit Judge, dissenting:
 
 8
 For the reasons set forth in my dissent in Rabang v. Immigration and Naturalization Service, --- F.3d ---- (9th Cir.1994), I dissent in this matter.
 
 
 
 [1]
 "All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV
 
 
 [2]
 We note that Summerfield does not argue that her due process rights were violated in the conduct of the deportation proceedings. Respondents in immigration proceedings are entitled to procedural due process. See Magallanes-Damian v. INS, 783 F.2d 931, 933 (9th Cir.1986)